FIRST NAT. BANK OF TISHOMINGO v. LATHAM.

No. 1770.   Opinion Filed May 6, 1913.

(132 Pac. 891.)

1. CORPORATIONS—Service of Process—Return—Sufficiency.   In an action against a national bank, the return on the summons showing the date of the receipt and that the officer executed the same "in my county" by leaving a true copy with the cashier, naming him, "president not in the county," construed in connection with the summons, and where served in the county, and where the action is pending, and of which the sheriff is an officer, and where defendant is engaged in business, is a sufficient return showing service upon the corporation as required by section 5604, Comp. Laws 1909.

2. ACTION—Joinder of Causes of Action.   Same as that in paragraph 3 of syllabus in State Bank of Paden v. Lanam, 34 Okla. 485, 126 Pac. 220.

3. COURTS—County Courts—Jurisdiction—Statutes.   Same as that in paragraph 1 of syllabus in State Bank of Paden v. Lanam, 34 Okla. 485, 126 Pac. 220.

4. BANKS AND BANKING—Action for Usury—Giving of Renewal Note.   The giving of a renewal note will not sustain a recovery from a national bank, under Rev. St. U. S. sec. 5198 (U. S. Comp. St. 1901, p. 3493), on account of usurious interest in the original note, since the payment contemplated by that statute is an actual payment, and not a further promise to pay.

5. ACCORD AND SATISFACTION—Payment—What Constitutes— Definition.   Where, in the delivery of chattels in settlement of a liquidation amount, no valuation of the property is fixed or agreed upon at the time, the act constitutes, not a payment in property, but an accord and satisfaction, though having the effect of discharging the indebtedness.

6. **SAME—Pleading and Proof.** In an action brought under section 5198, Rev. St. U. S. (U. S. Comp. St. 1901, p.. 3493), to recover the penalty provided for the payment of usurious interest, facts constituting accord and satisfaction cannot be proven under the general allegation of payment..

7. **CORPORATIONS—Actions Against—Pleading—Admission of Incorporation.** In an action against a national bank, where the answer consists of a general denial and is unverified, the due incorporation of the banking .corporation stands admitted.

(Syllabus by Sharp, C.)

*Error from Johnston .County Court;*
*Nick Wolfe, Judge.*

Action by C. D. Latham against the First National Bank of Tishomingo. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

*Horton & Smith* and *S. C. Treadwell,* for plaintiff in error. *P. H. B. 'Shearer,* for defendant in error.

Opinion by SHARP, C. It is first urged that the court erred in overruling defendant's motion to quash the return of service of summons. The petition was filed January 18, 1909, and on the same day the court issued a summons in the regular form, directed to the sheriff of Johnston county, commanding him to notify the First National Bank of Tishomingo that it had been sued by C. D. Latham in the county court of Johnston county, Okla. The return and answer days were named in the body of the summons. Summons was issued under the seal of the court and signed by the judge thereof. There was indorsed on the summons the amount for which, with interest, judgment would be taken, if the defendant failed to appear. The return of the summons shows that it was received on the day of its issuance and was executed by the sheriff "in my county by leaving a true copy of the within summons with all the indorsements thereon to D. C. Teter, the cashier. President not in the county on the 18th day of January, 1909." Summons was duly signed by the sheriff, indorsed and filed by the clerk of the county court, January 18, 1909. That the service was had in

Johnston county sufficiently appears from that part of the return showing the summons to have been served by the sheriff of Johnston county "in my county." The summons directed the sheriff to serve the First National Bank of Tishomingo. The return showed that it was served on D. C. Teter, the cashier. Section 5604, Comp. Laws 1909, authorized the service of summons upon the cashier when the president is not found in the county. Construing the summons and the return thereon as a whole, it sufficiently appears that the official served was the cashier of defendant bank, and that the absent official was the president of the defendant bank. That part of the return which states "president not in the county" should be construed to mean not in Johnston county, the county in which the action was pending, and where the defendant was engaged in business, and of which the officer serving the process was sheriff. In such cases the presumption is, until the contrary is made to appear, that the sheriff has done his duty and has served the process upon the proper party. *Kansas City, Ft. S. & Memphis Ry. Co. v. Daughtry, Adm'r*, 138 U. S. 298, 11 Sup. Ct. 306, 34 L. Ed. 963. The rule, however, should not be extended to cases where the return fails to show proper service. *Rowe v. Table Mountain Water Co.*, 10 Cal. 441; *Keener v. Eagle Lake Land, etc., Co.*, 110 Cal. 627, 43 Pac. 14; *San Antonio & A. P. Ry. Co. v. Wells*, 3 Tex. Civ. App. 307, 23 S. W. 31; *Missouri, K. & T. Ry. Co. v. Crowe*, 9 Kan. 496; *McMurtry v. Tuttle*, 13 Neb. 232, 13 N. W. 213; *Ft. Wayne Ins. Co. v. Irwin*, 23 Ind. App. 53, 54 N. E. 817. We are familiar with the rule that, where substituted service of summons is made, it is sufficient to give the court jurisdiction only where the condition upon which it is presumably made exists, and that the existence is not to be inferred but must appear by affirmative statements in the return. The question here is one of construction of the return, taken in connection with the summons itself, and to our minds contains a sufficient compliance with the requirement of the statute.

The second specification of error is that the court erred in overruling the first, second, and third paragraphs of defendant's

demurrer. The first ground thereof was that several causes of action were improperly joined in the same petition. The causes of action are of the same class, and all arose under the identical provision of the statute, the only difference being that of time and amount; the parties are the same and are affected in the same right; the venue is the same; the allegations affecting each of the several causes of action are similar, and the defense is the same; the same character of relief was sought and obtained. Hence the causes of action were properly united in one petition, as provided in section 5623, Comp. Laws 1909. *State Bank of Paden v. Lanam,* 34 Okla. 485, 126 Pac. 220; *First National Bank of Tishomingo v. Ingle, ante;* 132 Pac. 895.

The second and third grounds of demurrer go to the jurisdiction of the court over the subject-matter. It is urged that by reason of the amount involved in the third and fourth paragraphs of plaintiff's petition, each being less than $200, the county court therefore had no jurisdiction. The position is untenable. *Cooper v. Austin,* 30 Okla. 297, 119 Pac. 206; *First Nat. Bank of Mill Creek v. Langston,* 32 Okla. 795, 124 Pac. 308; *State Bank of Paden v. Lanam, supra.*

The third and fourth assignments of error may be considered together, as they involve the same general proposition; the fourth, in addition, presenting the question of pleading and evidence. These assignments of error deal with the law of payment, of medium of payment, of accord and satisfaction, of whether any payment in anything but money, or evidence of accord and satisfaction, may be shown under a general allegation of payment. Plaintiff's action is one founded upon section 5198, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3493), for taking interest in excess of the lawful rate. The statute provides that, in case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representative, may recover back, in an action in the nature of debt, twice the amount of the interest thus paid from the association taking or receiving the same.

Vol. 37—19.

Plaintiff's petition in the third, fourth, fifth, and sixth paragraphs charges the payment of various sums of usurious interest to defendant. On the trial it developed that three of the notes alleged to contain usurious interest were not paid, · but that on the 28th day of December, 1907, said notes were taken up and the amount of indebtedness represented thereby included in a new note for $539.90, due October 15, 1908. So that, so far as we are able to say, whatever usury may have attached in the course of dealings between the parties, made the subject of this action, was brought forward and included in the renewal note, the mere giving of which did not ·constitute the payment of interest. *First National Bank v. Lasater,* 196 U. S. 115, 25 Sup. Ct. 206, 49 L. Ed. 408; *Daingerfield National Bank v. Ragland,* 181 U. S. 46, 21 Sup. Ct. 536, 45 L. Ed. 738; *Brown v. Marion National Bank,* 169 U. S. 416, 18 Sup. Ct. 390, 42 L. Ed. 801; *Farmers' & Mechanics' Nat. Bank v. Hoagland* (C. C.) 7 Fed. 159; *Pickett v. Merchants' Nat. Bank,* 32 Ark. 346; *Lanham v. Crete First Nat..Bank,* 42 Neb. 757, 60 N. W. 1041; *Kearney v. Clarion First Nat. Bank,* 129 Pa. 577, 18 Atl. 598; *Davey v. First Nat. Bank of Deadwood,* 8 S. D. 214, 66 N. W. 122; *Talbot v. Sioux City First Nat. Bank,* 106 Iowa, 361, 76 N. W. 726. The testimony as to the medium and method by which it was claimed the renewal note was discharged or paid was not disputed. Prior to the maturity of the note, and on or about the 31st day of July, 1908, the plaintiff and cashier of the defendant bank, at the instance of the former, effected a settlement of the note in question, and perhaps two other notes, known as the Murray and Sadler notes, on which plaintiff was liable. Proof, however, as to what the real settlement was as to these latter notes is very unsatisfactory, and we are unable from the record before us to accurately determine whether the settlement finally effected was to include both or either of the latter notes.

Plaintiff's testimony tended to show that the agreement reached between him and the bank was that he was to turn over to the bank the property mortgaged to secure the note's payment,

and that the bank was to sell it, presumably under the terms of the mortgage, and to notify plaintiff of the time and place of the sale that he could be present and protect himself against the property being sold at a sacrifice. It further appears that part or all of the property was subject to a second mortgage. No valuation was ever put upon the property delivered under the terms of the settlement. A day or two later a new contract was made between the plaintiff and the bank whereby a portion of the property, at an agreed valuation, was allowed to remain in the plaintiff's possession, and he executed a new note therefor, secured by personal indorsement. At the time the settlement was made plaintiff's property was in the country, located at different points, and some of it was not delivered to the bank for a number of weeks thereafter. After the new note was executed, the bank delivered to the plaintiff the note for $539.90, stamping it paid. At the same time it also delivered the three original notes, which it seems had until then remained in the bank's possession, attached to the renewal note.

It is not easy to fully understand the plaintiff's testimony. It is difficult to understand how it was that these notes were delivered to plaintiff, and yet the mortgaged property was turned over to the bank only for the purpose of sale, unless it was that in any event plaintiff's notes were to be settled, and that, if the property brought more than the amount due on the notes, then the bank was to account to the plaintiff for the excess. Whether the property delivered was to include the Murray and Sadler notes, or either, we cannot say, and, as it is not sought to recover usury on these notes, we have considered them only in view of the fact that it was contended by plaintiff at the trial that the original agreement for the delivery of the mortgaged property was to discharge both of these notes. This agreement, however, was modified shortly after being made, and it is the subsequent agreement about which the testimony is so confusing and unsatisfactory.

Section 4627, Comp. Laws 1909, then in force, provided that a negotiable instrument should be payable in money only,

and without any condition not certain of fulfillment. But, notwithstanding the statute, the parties may by agreement between themselves fix a price at which the property delivered by the debtor to the creditor shall be valued, and when so received it constitutes a payment, and is in law equivalent to a payment of so much money. *Morrill v. Baggott,* 157 Ill. 240, 41 N. E. 639; *Griffith v. Creighton, Adm'r.,* 61 Mo. App. 1; *Howard el al. v. Norton,* 65 Barb. [N. Y.] 161; 1 Cyc. 336; 1 A. & E. Enc. Law, 418. Under such circumstances, the delivery of the property constitutes not alone a satisfaction or settlement of the debt, but a payment thereof, as distinguished from an accord and satisfaction. It is not the result reached, namely, the extinguishment of the debt, but the means of its discharge, that we are considering. Both payment and accord and satisfaction may extinguish the debt, but by different processes. In the reported cases that we have examined, where the delivery of property pursuant to an agreement was held a sufficient payment, as such, of the indebtedness, we find that in all instances an agreed and fixed valuation was put on the property by the parties. *Jackson v. Garner,* 79 Ga. 415, 7 S. E. 213; *Pritchard v. Meekins,* 98 N. C. 244, 3 S. E. 484; *First Nat. Bank of Blakely v. Davis,* 135 Ga. 687, 70 S. E. 246, 36 L. R. A. (N. S.) 134; *Morrill v. Baggott,* 157 Ill. 240, 41 N. E. 639; *Hoopes v. Ferguson,* 57 Iowa, 39, 10 N. W. 286; *State Bank of Tabor v. Kelly,* 109 Iowa, 544, 80 N. W. 520; *Pike, Morgan & Co. v. Wathen,* 25 Ky. Law Rep. 1264, 78 S. W. 137; *Id.,* 25 Ky. Law Rep. 640, 76 S. W. 322; *Griffith v. Creighton,* 61 Mo. App. 1; *Heath v. Page,* 48 Pa. 130; *Esselman v. Wells,* 8 Humph. (Tenn.) 482; *Taylor v. Sturgis,* 29 Tex. Civ. App. 270, 68 S. W. 538; *Howe v. Carpenter,* 49 Wis. 697, 6 N. W. 357.

In the instant case there was no agreement as to price, and on the trial no definite proof as to the character or the amount of the mortgaged property delivered. Obviously, there was no payment of the notes, but rather a settlement thereof by means of accord and satisfaction. An accord and satisfaction is defined to be:

"An agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other, which when performed is a bar to all actions upon this account." (*Houston Bros. v. Wagner*, 28 Okla. 367, 114 Pac. 1106.)

A valid accord and satisfaction takes place where some specific article of personal property or a conveyance of real property is accepted in satisfaction of a demand, and this is true irrespective of the intrinsic value of the property. We have no hesitation in reaching the conclusion that under the authorities the delivery of the mortgaged chattels constituted, not a payment as such, but an accord and satisfaction.

Was, therefore, evidence tending to show accord and satisfaction of an usurious indebtedness within the purview and meaning of section 5198, Rev. St. U. S., and, if so, was it admissible under the general allegation of payment of so much money on account of the usurious notes? Answering the latter inquiry, we think not. It is a rule very generally, though not universally, recognized that under a plea of payment evidence of accord and satisfaction is inadmissible. Where property is delivered and received in settlement of an indebtedness, it is only by virtue of a subsequent and independent agreement to that effect. It is new matter arising out of a different and collateral undertaking between the parties, and not, as here, the performance or carrying out of the original obligation to pay in money. *Smith v. Elrod*, 122 Ala. 269, 24 South. 994; *Owens v. Chandler*, 16 Ark. 651; *Coles v. Soulsby*, 21 Cal. 47; *Barnum v. Green*, 13 Colo. App. 254, 57 Pac. 757; *Mott v. Hurd*, 1 Root (Conn.) 73; *Stringer et al. v. Breen*, 7 Ind. App. 557, 34 N. E. 1015; *Hamilton v. Coons et al.*, 5 Dana (35 Ky.) 317; *Grinnell v. Spink*, 128 Mass. 25; *Wheaton v. Nelson el al.*, 11 Gray (Mass.) 15; *Ulsch v. Muller*, 143 Mass. 379, 9 N. E. 736; *Combs v. Smith, Receiver*, 78 Mo. 32; *First Nat. Bank v. Chilson*, 45 Neb. 257, 63 N. W. 362; *Crilly v. Ruyle*, 87 Neb. 367, 127 N. W. 251; *Freiermuth v. McKee*, 86 Mo. App. 64; *Jacobs v. Day*, 5 Misc. Rep. 410, 25 N. Y. Supp. 763; *Shelton et al. v.*

*Hurd*, 7 R. I. 403, 84 Am. Dec. 564; volume 2, Greenleaf on Evidence (16th Ed.) sec. 29; 1 Enc. L. & P. 656; Bates, Pl. & Pr. pp. 851, 2411, 2412; Pomeroy's Code Remedies, sec. 712; Abbott's Trial Brief, Pleadings, vol. 2, sec. 362; 1 Cyc. 341, 342.

Whether the delivery of property by way of accord and satisfaction constitutes the payment of usury within the meaning of section 5798, Rev. St. U. S., presents a question of no little importance, and one not necessary to a determination of the case.

It is further insisted that there is no sufficient proof that the defendant was a national bank. The petition charged that defendant was at the time complained of a national bank, and as such engaged in business in Johnston county. By section 5136, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3455), a national bank upon the completion of its organization becomes by operation of law a body corporate, with the powers and authority in said section contained. The answer of defendant was in the form of a general denial and was not verified. Section 5648, Comp. Laws 1909, provides that in all actions allegations of the existence of a corporation shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney. It is obvious, therefore, that, the answer not being verified as required by statute, no issue of fact was joined upon the question of the due incorporation of defendant as a national bank. Besides, there was testimony sufficient to establish the fact that defendant was a national bank, even had the issue been properly joined.

The mere indorsement by the bank on the $539.90 note, without the knowledge of defendant in error, of credit by rebate interest of $55.10 did not free the note of usury, as the original usurious obligation continued to exist. *Gray v. Brown*, 49 Me. 544; *Adams v. Moody*, 91 Mo. App. 41.

There was evidence tending to show the payment in cash of a small amount of interest (greatly less than alleged in the petition); and, while each of the notes appears to contain usury, it does not in fact appear that the cash payments so made were usurious. The usury charged in the main was carried forward

and included in the last renewal note, which was settled, as we have seen, by accord and satisfaction. It was therefore error for the court to admit proof of accord and satisfaction under the general allegation of payment of a usurious rate of interest.

The judgment of the trial court should be reversed, and the cause remanded, with instructions to grant leave to plaintiff to reform or amend his petition, if desired.

By the Court: It is so ordered.